UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EDWARD E. GILLEN CO.
218 West Becher Street
Milwaukee, WI 53207

        Plaintiff,

  v.

LIBERTY MUTUAL INSURANCE COMPANY
175 Berkeley Street
Boston, Massachusetts 02116,

Case No. 10-C-564

THE INSURANCE COMPANY OF
THE STATE OF PENNSYLVANIA
175 Water Street, Floor 18
New York, NY 10038-4976,

and

LEXINGTON INSURANCE COMPANY
100 Summer Street
Boston, MA 02110

        Defendants.

## AMENDED COMPLAINT

Edward E. Gillen Co. ("Gillen") files this action against its excess liability insurer, The Insurance Company of the State of Pennsylvania ("ICSOP"), and its Professional liability carrier, Lexington Insurance Company ("Lexington"), for a declaration that they are liable to indemnify Gillen for an adverse arbitration award issued on May 17, 2010. This lawsuit was necessitated by the carriers' denials of any obligation to indemnify Gillen for the award issued against it in the amount of $2,163,369.08. Gillen has repeatedly made due demand that the defendants

indemnify Gillen for the adverse award. To date, ICSOP has refused to indemnify and claims that its investigation of coverage for the Award is "ongoing." Lexington has expressly denied any obligations under the policy it issued to Gillen.

Plaintiff, by its attorneys, Davis & Kuelthau, s.c., as and for its complaint against the defendants, alleges and shows to the Court as follows:

## PARTIES

1. Plaintiff, Gillen, is incorporated and exists under the laws of the State of Wisconsin with its principal place of business located at 218 West Becher Street, Milwaukee, Wisconsin 53207.

2. Defendant, The Insurance Company of the State of Pennsylvania is a foreign corporation with its principal office and place of business located at 175 Water Street, Floor 18, New York, New York 10038-4976. Upon information and belief, said insurance company is licensed to transact insurance business in the State of Wisconsin, does substantial business in Milwaukee County, Wisconsin, and is one of the AIG group of insurance companies.

3. Defendant, Lexington Insurance Company, is a foreign insurance corporation with its principal place of business located at 100 Summer Street, Boston, Massachusetts 02110. Upon information and belief, Lexington does substantial business in the State of Wisconsin, does substantial business in Milwaukee County, Wisconsin and is one of the AIG group of insurance companies.

## JURISDICTION AND VENUE

4. This is a proceeding for declaratory relief pursuant to 28 U.S.C. § 1332(a) to declare the legal obligations between the Parties under the relevant policies of insurance.

5. Upon information and belief, there is complete diversity of citizenship as between Gillen and the defendants.

6. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

7. Venue is proper in the Eastern District of Wisconsin.

## FACTS COMMON TO ALL CLAIMS

### A. The Policies

8. On or about January 1, 2006, Liberty Mutual Insurance Company ("Liberty") executed and delivered a primary commercial general liability policy to Gillen, insuring it up to $1 million per occurrence and a general aggregate of $2 million. The policy was in effect at all material times hereto and is identified as Policy No. TB1-141-434242-026.

9. The Liberty Mutual policy, among other things, contained an insuring agreement in which Liberty agreed to pay, up to its policy limits, those damages that Gillen became legally obligated to pay by reason of liability because of property damage caused by an "occurrence" during the policy period. The policy also required Liberty to defend any suit against Gillen seeking such damages. The term "occurrence" is defined in the policy as an "accident" and "property damage" is defined as "physical injury to tangible property including all resulting loss of use of that property, or loss of use of tangible property that is not physically injured."

10. On or about January 1, 2006, The Insurance Company of the State of Pennsylvania executed and delivered its commercial excess liability policy to Gillen, insuring it up to a per occurrence limit of $10 million, in excess of the Liberty occurrence limits. This policy was in effect at all material times hereto and is identified as Policy No. 6062776.

11.     The ICSOP policy, among other things, contains an insuring agreement, which provides at least the same coverage as does Liberty's controlling underlying insurance policy (the "ICSOP Policy").

12.     On or about January 1, 2006, Lexington executed and delivered its Architects and Engineers Professional Liability policy to Gillen, insuring it up to a per claim and policy aggregate of $5 million. The policy was in effect at all material times hereto and is identified as Policy No. 1155875 (the "Lexington Policy").

13.     The Lexington Policy, among other things, contained an insuring agreement in which Lexington agreed to pay, up to its policy limits, any Loss that Gillen became legally obligated to pay by reason of covered Claims arising from a Breach of Professional Duty in the performance of Professional Services during the policy period. The policy also required Lexington to defend any suit against Gillen seeking such Loss.

14.     The term Loss is defined in the policy to include any amount Gillen is legally obligated to pay for any Claim to which the Policy applies. Claim is defined as including any written demand alleging liability on the part of Gillen for Loss.

15.     Breach of Professional Duty is defined to include negligence in the performance or non-performance of Professional Services rendered to others by Gillen which results in Loss for which the Insured is legally liable.

16.     Professional Services means those services Gillen or any of its employees is legally qualified to perform for others in their capacity as an architect or engineer, among other roles.

**B.     The Project and Related Claims.**

17.     On or about February 3, 2006, The Meyne Company ("Meyne"), a general

4

contractor and a division of Bulley & Andrews, LLC ("Bulley & Andrews"), entered an agreement with the Latin School of Chicago (the "Owner") for the demolition of an existing structure and the construction of a new school building (the "Project").

18. Meyne hired Gillen to design and install an earth retention system ("ERS") for the Project, the purpose of which was to stabilize the ground to enable the construction of the Project. Following demolition of the existing structure, Gillen commenced work on the ERS in early April 2006.

19. On or about May 2, 2006, an adjacent property owner (the "Korndorfs") sustained and subsequently reported damage to their home, allegedly due to work on the Project. Work on the south end of the Project was stopped to determine how to prevent further damage to the Korndorf property, thereby resulting in delays to the Project.

20. As a result of these events, Bulley & Andrews submitted a claim against Gillen in May 2006 to recover various damages from Gillen, all flowing from the damage to the adjacent Korndorf property.

21. On or about December 18, 2006, Bulley & Andrews notified Gillen it sought over $3 million in claimed damages against it, thereby clearly implicating the ICSOP policy which was excess to Liberty's $1 million occurrence limits.

22. The Korndorfs also submitted a claim against Gillen for its damages. Upon information and belief, the Owner later agreed to indemnify the Korndorfs for their claimed damages.

23. Gillen informed Liberty, ICSOP and Lexington of the Korndorf and the Bulley & Andrews claims pursuant to law and pursuant to the requirements of the respective policies of insurance.

5

24. Liberty promptly hired defense counsel to represent Gillen's interests in investigating the claims.

25. The defense counsel appointed by Liberty in May 2006 has been working on the Bulley & Andrews claim continuously ever since, including through the arbitration, which took place in March 2010, and also including a pending challenge to the adverse Award.

26. Neither Liberty nor ICSOP issued a reservation of rights letter with respect to the claims asserted by Bulley & Andrews until February 8, 2010, and March 9, 2010, respectively – more than four years after Liberty first assumed the defense without reservations.

27. Prior to their sudden and late-date issuance of its reservation of rights to assert noncoverage for the Bulley& Andrews claims, Gillen reasonably relied on Liberty's and ICSOP's years of silence with respect to their rights or intent to challenge coverage.

28. Gillen reasonably believed Liberty had accepted a complete defense without reservation or intent to later challenge coverage, and that both Liberty and ICSOP, both of which controlled Gillen's defense and any settlement of Bulley & Andrews' claims, would cover any and all liability arising from the project.

29. Gillen relinquished all control of its defense and settlement of its claims to Liberty, ICSOP and the insurance-appointed defense counsel.

30. Likewise, although Lexington was put on notice of the claim no later than early January 2007, it did not, upon information and belief, issue a reservation of rights letter until February 22, 2010. Accordingly, up until February 22, 2010, Gillen reasonably believed for more than 3 years, that Lexington would cover all liability arising from its Professional Services rendered on the Project.

31. Lexington attended the March 2010 arbitration.

32. Upon information and belief, all three carriers failed to engage in any meaningful settlement discussions with Bulley & Andrews.

33. On May 17, 2010, the arbitration panel issued an adverse award against Gillen in the amount of $2,163,369.08.

34. Gillen has repeatedly made due demand that Liberty, ICSOP and Lexington indemnify Gillen for the adverse Award.

35. On or about June 9, Liberty agreed to pay its per occurrence policy limits of $1 million and has since paid those limits to Bulley & Andrews.

36. To date, ICSOP, the follow-form liability carrier whose policy is excess to Liberty's policy, has refused to indemnify Gillen.

37. Lexington has expressly denied any coverage obligation to Gillen.

## CLAIM I
## DECLARATORY JUDGMENT

38. Gillen hereby incorporates the allegations contained in Paragraphs 1 through 37 above as though fully set forth herein.

39. The ICSOP and Lexington policies are writings that constitute contracts between them and their insured, Gillen.

40. Gillen is entitled, pursuant to 28 U.S.C. § 1332(a), to a declaration of its rights as follows:

    (a) The ICSOP and Lexington policies require each of them to indemnify Gillen for some or all of the balance of the Award;

    (b) The ICSOP and Lexington policies require each of them to defend or contribute to the ongoing defense of Gillen, including Gillen's challenge to the Award;

    (c) ICSOP and Lexington were obligated to meaningfully participate by way

of making reasonable settlement contributions, in good faith, related to the Bulley & Andrews claim; and

(d) ICSOP's and Lexington's failures to notify Gillen of any intent to challenge coverage for several years, result in prejudice to Gillen and constitute a waiver of their rights to now assert non-coverage.

## CLAIM II
## BAD FAITH

41. Gillen hereby incorporates the allegations contained in Paragraphs 1 through 40 above as though fully set forth herein.

42. Based on the plain language of the ICSOP and Lexington policies, and other extrinsic evidence, there can be no reasonable dispute that each is in fact obligated to indemnify Gillen for the balance of the Award.

43. Neither ICSOP nor Lexington had a reasonable basis for first asserting any purported right to deny any indemnity obligations on the eve of arbitration, several years after each was first notified of the Claims against Gillen.

44. Neither ICSOP nor Lexington had a reasonable basis for refusing or failing to meaningfully participate in settlement negotiations and refusing or failing to consider making reasonable contributions toward settlement of the Claims against Gillen.

45. Neither ICSOP nor Lexington has a reasonable basis for refusing to indemnify Gillen or for taking the position that they have no obligation to indemnify Gillen for the balance of Award that remains unpaid after Liberty's $1 million contribution.

46. Gillen relinquished its rights and complete control over the defense and settlement of the claims against it to its carriers.

47. ICSOP's and Lexington's conduct, representations, and failures to notify Gillen of any right or intent to later assert non-coverage caused Gillen, over the course of several years, to

reasonably rely that they would, in fact, cover any of Gillen's liabilities with respect to the Bulley & Andrews claims.

48. Neither ICSOP nor Lexington had a reasonable basis for taking the position that they had no obligation to indemnify Gillen for any potential adverse Award on the eve of arbitration, and several years after Gillen first put each on notice of the Claims against it.

49. ICSOP and Lexington know they had no reasonable basis or have recklessly disregarded the lack of a reasonable basis for their unjustified policy interpretations and for their late-date assertions of same.

50. ICSOP's and Lexington's positions would deprive Gillen from receiving the benefit of one penny of indemnity in return for substantial premiums paid.

51. ICSOP's and Lexington's policy positions and overall conduct are in bad faith.

52. ICSOP's and Lexington's bad faith has or will cause compensatory and punitive damages in an amount to be determined at trial.

## CLAIM III
## BREACH OF CONTRACT

53. Gillen hereby incorporates the allegations contained in Paragraphs 1 through 52 above as though fully set forth herein.

54. Gillen paid approximately $134,900.00 to ICSOP for its excess policy of insurance.

55. Gillen paid approximately $92,791.00 to Lexington for its policy of insurance.

56. ICSOP and Lexington have breached their insurance contracts by failing or refusing to meaningfully participate in or considering a meaningful contribution toward settlement, and by refusing to indemnify Gillen for the Award, all causing damages to Gillen in an amount to be determined at trial.

## **DEMAND FOR RELIEF**

(a) A declaration by the Court pursuant to 28 U.S.C. § 1332 that the policy of insurance issued by ICSOP to Gillen provides for indemnity for the adverse Award issued against Gillen; therefore, ICSOP is obligated to pay the balance of the Award owed by Gillen;

(b) A declaration by the Court pursuant to 28 U.S.C. § 1332 that the policy of insurance issued by Lexington to Gillen provides indemnity for the Award issued against Gillen; therefore, Lexington is obligated to pay the balance of the Award owed by Gillen;

(c) A declaration by the Court that ICSOP's and Lexington's failure to meaningfully participate in settlement negotiations and their denial of or refusal to pay indemnity obligations related to the Bulley & Andrews Claims constitute breaches of the insuring agreements;

(d) A declaration by the Court pursuant to 28 U.S.C. § 1332 that ICSOP and Lexington waived their rights to assert noncoverage for any damages awarded against Gillen by Bulley & Andrews related to the Project; therefore, each is obligated to pay the balance owed by Gillen on the Award;

(e) A declaration by the Court pursuant to 28 U.S.C. § 1332 that ICSOP's and Lexington's refusals to indemnify Gillen for the balance of the Award is a bad faith refusal to comply with their policy obligations;

(f) Actual damages in an amount to be proven at trial;

(g) Punitive damages in an amount to be determined at trial;

(h) Costs and attorney's fees allowed by law; and

(i) Such other relief as the court deems just.

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY ON ISSUES SO TRIABLE.

Dated: July 16, 2010.

                s/Tara M. Mathison
                Tara M. Mathison
                State Bar No. 1032821
                Heather K. Gatewood
                State Bar No. 1060344
                Attorneys for Plaintiff,
                EDWARD E. GILLEN CO.
                111 E. Kilbourn Avenue
                Suite 1400
                Milwaukee, WI 53202
                414.276.0200

OF COUNSEL:
Davis & Kuelthau, s.c.


Direct contact information:

| | |
|---|---|
| Tara M. Mathison | 414.225.1444 direct dial |
| | 414.278.3644 direct fax |
| | tmathison@dkattorneys.com |
| | |
| Heather K. Gatewood | 414.225.1418 direct dial |
| | 414.278-3618 direct fax |
| | hgatewood@dkattorneys.com |