**EXHIBIT B**

# EXCESS LIABILITY DECLARATIONS

| THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA | ILLINOIS NATIONAL INSURANCE CO. | AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY |
|---|---|---|
| Executive Offices: 70 Pine Street New York, NY 10270 [X] | Executive Offices: 70 Pine Street New York, NY 10270 [ ] | Executive Offices: 70 Pine Street New York, NY 10270 [ ] |

**POLICY NUMBER:** 4  6062776  **RENEWAL OF:** 4  6056273

**PRODUCER NAME:** COLEMONT INSURANCE BROKERS OF IL LLC
**ADDRESS:** 300 S WACKER DR., STE 900
CHICAGO, IL 60606-6759

**ITEM 1. NAMED INSURED:** EDWARD E. GILLEN COMPANY
**ADDRESS:** DLH CONSTRUCTION & TRUCKING , INC.
218 W BECHER ST
MILWAUKEE, WI 53207-1112

> RELEASED
> TO BROKER
> 1/12/06

**ITEM 2. POLICY PERIOD: FROM:** January 1, 2006  **TO:** January 1, 2007
12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE

**ITEM 3. LIMITS OF INSURANCE:**

The Limits of Insurance, subject to all the terms of this policy, are:

$5,000,000  Each Occurrence

$5,000,000  Annual Aggregate (as defined in the First Underlying Insurance Policy)

**ITEM 4. SCHEDULE OF UNDERLYING INSURANCE**

<u>First Underlying Insurance Policy</u>
Insurer, Policy No. and Term
SEE ATTACHED SCHEDULE OF UNDERLYING

<u>Applicable Limits</u>

Each Occurrence
Annual Aggregate (where applicable)

<u>Other Underlying Insurance Policy</u>
Insurer, Policy No. and Term
SEE ATTACHED SCHEDULE OF UNDERLYING

<u>Applicable Limits</u>

Each Occurrence
Annual Aggregate (where applicable)

**ITEM 5. POLICY PREMIUM:** $134,900.00

Taxes: N/A
Surcharges: N/A

**ITEM 6. SEE ATTACHED SCHEDULE**

**COUNTERSIGNED:** _____01/10/2006_____  BY: _____
Authorized Representative

76588 (10/00)
CV0004

## EXCESS LIABILITY POLICY FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured as shown in Item 1 of the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree with you to provide coverage as follows:

### INSURING AGREEMENTS

I.     Coverage

    A.     We will pay on your behalf the Ultimate Net Loss in excess of the Underlying Insurance as shown in Item 4 of the Declarations, but only up to an amount not exceeding our Limit of Insurance as shown in Item 3 of the Declarations. Except for the terms, definitions, conditions and exclusions of this policy, the coverage provided by this policy shall follow the terms, definitions, conditions and exclusions of the First Underlying Insurance Policy as shown in Item 4 of the Declarations.

    B.     The Limits of Insurance shown in Item 3 of the Declarations state the most we will pay regardless of the number of Insureds, claims made or suits brought or persons or organizations making claims or bringing suits.

    C.     Maintenance of Underlying Insurance

    The limits of insurance of the Underlying Insurance shown in Item 4 of the Declarations shall be maintained in full effect during the period of this policy except for any reduction or exhaustion of aggregate limits contained therein solely by the payment for damages for accidents or occurrences, whichever is applicable, that take place during each annual period of this policy and that are insured by this policy.

    If you fail to comply with this requirement, we will only be liable to the same extent that we would had you fully complied with this requirement.

II.     Definitions

    A.     Ultimate Net Loss

    The term "Ultimate Net Loss" means the amount payable in settlement of the liability of the Insured after making deductions for all recoveries and for other valid and collectible insurance, excepting however the Underlying Insurance shown in Item 4 of the Declarations.

60225 (4/94)
CV0360

Case 2:10-cv-00564-RTR    Filed 08/24/10    Page 3 of 28    Document 23-2

B. Each Annual Period

The term "Each Annual Period" means each consecutive period of one year commencing from the inception date of this policy.

C. Pollutants

The term "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

D. Hostile Fire

The term "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

III. Conditions

A. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, earned premium will be calculated pro rata based on the time this policy was in force.

5. If you cancel, earned premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

Case 2:10-cv-00564-RTR   Filed 08/24/10   Page 4 of 28   Document 23-2

7. The first Named Insured in Item 1 of the Declarations shall act on behalf of all other Insureds with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

**B. Changes**

You must promptly notify us of any coverage or limit changes made after the inception date of this policy to the First Underlying Insurance Policy as shown in Item 4 of the Declarations.

**C. Defense**

We will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, suits or proceedings relative to any accident or occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

**D. Notification of Accidents or Occurrences**

You must see to it that we are notified as soon as practicable of any accident or occurrence which may result in any claim or suit under this policy.

**E. Premium**

The first Named Insured shown in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

At the beginning of the policy period, you must pay us the Policy Premium shown in Item 5 of the Declarations.

If this policy is cancelled, we will compute the earned premium for the time this policy was in force. If the earned premium is less than the Policy Premium, we will return the difference to you.

**F. Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay, or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.

But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Underlying Insurance or assume any obligation within the Underlying Insurance area.

60225 (4/94)
CV0360

IV.    **Exclusions**

This insurance shall not apply to:

A.    1.    Ultimate Net Loss arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

2.    Any obligation of the Insured to indemnify any party because of damages arising out of such Ultimate Net Loss as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.    Any obligation to defend any suit or claim against the Insured seeking damages, if such suit or claim arises from Ultimate Net Loss as a result of the manufacture of, mining of, use of, sales of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

B.    1.    Ultimate Net Loss arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

2.    Any loss, cost or expense arising out of any governmental direction or request that we, the Insured or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

3.    Any loss, cost, or expense, including but not limited to costs of investigation or attorney's fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

This exclusion B. shall not apply to Ultimate Net loss arising out of:

1.    Heat, smoke or fumes from a hostile fire;

2.    The upset, overturn or collision of a motor vehicle; or

3.    The Products-Completed Operations Hazard.

C.    Ultimate Net Loss:

a.    with respect to which the Insured is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

60225 (4/94)
CV0360

Case 2:10-cv-00564-RTR   Filed 08/24/10   Page 6 of 28   Document 23-2

b. resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the Insured is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2. Ultimate Net Loss resulting from the hazardous properties of nuclear material, if:

   a. the nuclear material (1) is at any nuclear facility owned by the Insured or operated by the Insured or on the Insured's behalf, or (2) has been discharged or dispensed therefrom;

   b. the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the Insured or on the Insured s behalf; or

   c. the Ultimate Net Loss arises out of the furnishing by the Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to Property Damage to such nuclear facility and any property thereat.

3. As used in this exclusion:

   a. "hazardous properties" includes radioactive, toxic or explosive properties;

   b. "nuclear material" means source material, special nuclear material or by-product material;

   c. "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

   d. "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   e. "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

Case 2:10-cv-00564-RTR   Filed 08/24/10   Page 7 of 28   Document 23-2

f.   "nuclear facility" means:

   (1)   any nuclear reactor,

   (2)   any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes,

   (3)   any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the Insured's custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (4)   any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

g.   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h.   Ultimate Net Loss includes all forms of radioactive contamination of property.

60225 (4/94)
CV0360

Case 2:10-cv-00564-RTR   Filed 08/24/10   Page 8 of 28   Document 23-2

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

_____
Secretary
The Insurance Company
of the State of Pennsylvania

_____
President
The Insurance Company
of the State of Pennsylvania

60225 (4/94)
CV0360

Page 7 of 7

Issued to: EDWARD E. GILLEN COMPANY
DLH CONSTRUCTION & TRUCKING , INC.

Policy Number: 4      6062776

By: THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY | Liberty Mutual Insurance Co. TBI-141-434242-026 01/01/06 01/01/07 | $1,000,000 EACH OCCURRENCE $2,000,000 GENERAL AGGREGATE $2,000,000 PER PROJECT AGGREGATE $2,000,000 PRODUCTS/C. OPS. AGGREGATE |
| AUTO LIABILITY | Liberty Mutual Insurance Co. ASI-141-434-242-036 01/01/06 01/01/07 | $1,000,000 COMBINED SINGLE LIMIT |
| EMPLOYERS LIABILITY | Liberty Mutual Insurance Co. WC2-141-434242-016 01/01/06 01/01/07 | $500,000 EACH ACCIDENT $500,000 DISEASE EACH EMPLOYEE $500,000 DISEASE POLICY LIMIT |
| EMPLOYEE BENEFITS LIABILITY | Liberty Mutual Insurance Co. TBI-141-434-242-026 01/01/06 01/01/07 | $1,000,000 EACH CLAIM $3,000,000 AGGREGATE |

_____
**AUTHORIZED REPRESENTATIVE**

UNDSCH (5/99)
AH0006

Issued to: EDWARD E. GILLEN COMPANY          Policy Number: 4     6062776
           DLH CONSTRUCTION & TRUCKING , INC.

By: THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY | Liberty Mutual Insurance Compa<br>TO BE ADVISED<br>01/01/06<br>01/01/07 | $1,000,000<br>EACH OCCURRENCE<br>$2,000,000<br>GENERAL AGGREGATE<br>$2,000,000<br>PRODUCTS/C. OPS. AGGREGATE<br>$2,000,000<br>PER PROJECT AGGREGATE |
| AUTO LIABILITY | Liberty Mutual Insurance Compa<br>TO BE ADVISED<br>01/01/06<br>01/01/07 | $1,000,000<br>COMBINED SINGLE LIMIT |
| UNINSURED/UNDERINSURED MOTORIST | | $1,000,000<br>COMBINED SINGLE LIMIT |
| EMPLOYERS LIABILITY | Liberty Mutual Insurance Compa<br>TO BE ADVISED<br>01/01/06<br>01/01/07 | $500,000<br>EACH ACCIDENT<br>$500,000<br>DISEASE EACH EMPLOYEE<br>$500,000<br>DISEASE POLICY LIMIT |
| EMPLOYEE BENEFITS LIABILITY | Liberty Mutual Insurance Compa<br>TO BE ADVISED<br>01/01/06<br>01/01/07 | $1,000,000<br>EACH OCCURRENCE<br>$3,000,000<br>AGGREGATE |

_Bernard J. Kelly_

**AUTHORIZED REPRESENTATIVE**

57726
AH0006

# FORMS SCHEDULE

**Named Insured:** EDWARD E. GILLEN COMPANY
DLH CONSTRUCTION & TRUCKING, INC.

**Policy Number:** 4606-2776

**Effective 12:01 AM:** JANUARY 1, 2006

| End't. No. | Form Name | Form Number/ Edition Date |
|---|---|---|
| | COMMERCIAL EXCESS LIABILITY DECLARATION PAGE | 76588 (10/00) |
| | COMMERCIAL EXCESS LIABILITY POLICY FORM | 60225 (04/94) |
| | SCHEDULE OF UNDERLYING | UNDSCH |
| 1 | TERRORISM EXCLUSION | MNSCPT |
| 2 | WISCONSIN AMENDATORY ENDORSEMENT | 54990 (12/92) |
| 3 | ERISA EXCLUSION | MNSCPT |
| 4 | COVERAGE TERRITORY LIMITATION ENDORSEMENT | MNSCPT |
| 5 | PREMIUM COMPUTATION ENDORSEMENT | MNSCPT |
| 6 | CROSS SUITS EXCLUSION | MNSCPT |
| 7 | NOTICE OF OCCURRENCE ENDORSEMENT | 60441 (05/94) |
| 8 | FUNGUS EXCLUSION | MNSCPT |
| 9 | LEAD EXCLUSION | MNSCPT |
| 10 | MARINE LIABILITY EXCLUSION | 60468 (05/94) |

**Named Insured:**   EDWARD E. GILLEN COMPANY
                     DLH CONSTRUCTION & TRUCKING , INC.
**Policy Number:**   4      6062776
**Effective 12:01 AM:**   January 1, 2006

| End't. No. | Form Name | Form Number/ Edition Date |
|---|---|---|
| | SCHEDULE OF UNDERLYING | UNDSCH   (05/99) |

CIFMSC
C10226

## ENDORSEMENT NO. 1

**This endorsement, effective 12:01 AM:** January 1, 2006

**Forms a part of policy no.:** 4    6062776

**Issued to:** EDWARD E. GILLEN COMPANY
DLH CONSTRUCTION & TRUCKING , INC.

**By:** THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COMMERCIAL EXCESS LIABILITY POLICY FORM

### TERRORISM EXCLUSION

This insurance does not apply to loss arising directly or indirectly as a result of a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

For purposes of this endorsement and in compliance with the Terrorism Risk Insurance Act of 2002, an "act of terrorism" shall mean:

(1) Act of Terrorism :
    (A) Certification. - The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States:
        (i) To be an "act of terrorism",
        (ii) To be a violent act or an act that is dangerous to:
            (I) Human life,
            (II) Property, o
            (III)Infrastructure,
        (iii) To have resulted in damage within the United States, or outside of the United States in the case of:
            (I) An air carrier or vessel described in paragraph (5)(B), [for the convenience of this endorsement, paragraph (5)(B) reads: occurs to an air carrier (as defined in Section 40102 of title 49, United States Code) to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs, or at the premises of any United States mission],
            (II) the premises of a United States mission, and
        (iv)to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
    (B) Limitation: No act shall be certified by the Secretary as an "act of terrorism" if:
        (i) The act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation,

or
(ii) Property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

(C) Determinations Final: Any certification of, or determination not to certify, an act as an "act of Terrorism" under this paragraph shall be final, and shall not be subject to judicial review.

(D) Nondelegation: The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an "act of terrorism" has occurred.

All other terms, conditions and exclusions of the policy remain unchanged.

Authorized Representative
or countersignature (where required by law)

This endorsement, effective 12:01 AM:   January 1, 2006

Forms a part of policy no.:   4      6062776

Issued to:   EDWARD E. GILLEN COMPANY
               DLH CONSTRUCTION & TRUCKING , INC.

By:   THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

### WISCONSIN
### AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1). "we", "us", "our", and "Insurer" mean the insurance company which issued this policy, and 2). "you", "your", "named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page, and 3)"Other Insured(s) "means all other persons or entities afforded coverage under the policy.

In compliance with the Insurance Regulations of the State of Wisconsin, the following provisions are hereby added to the policy:

In the event a similar provision is already contained in the policy, the provisions of this endorsement take precedence over such similar provisions.

No action shall lie against the Insurer unless, as a condition precedent thereto all the terms of this policy, shall have been fully complied with.  Any person or organization or the legal representative thereof shall thereafter be entitled to recover the policy to the extent of the insurance afforded by this policy.

The terms of this policy shall not be changed except by endorsement issued to form a part of this policy, signed by a duly authorized agent of the Insurer.  Notice given by or on            behalf of the named Insured to any authorized agent of the Insurer with particulars  sufficient to identify the policy is notice to the Insurer.

Knowledge by an agent of the Insurer of any fact which breaches a condition of the policy shall be knowledge of the Insurer if such fact is known to the agent at the time the policy is issued or an application made or thereafter becomes known to the agent in the course of his dealings as an agent with the named Insured.  Any fact which breaches a condition of the policy and is known to the agent prior to the loss shall not void the policy or defeat a recovery thereon in the event of loss.

54990 (12/92)

By acceptance of this policy the named Insured and Other Insured(s) agree that the statements in the application and the declarations, and in any subsequent notice relating to this insurance are their agreements and representation, that this policy is issued and continued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the named Insured, Other Insured(s) and the Insurer or any of its agents relating to this insurance.

No misrepresentation or breach of affirmative warranty made by, or on behalf of, the named Insured or Other Insured(s) in the negotiation of this policy affects the Insurer's obligation under this policy unless the Insurer relies on it or it is made with intent to deceive, or unless the facts misrepresented or falsely warranted contribute to the loss. No failure of a condition prior to the loss and no breach of a promissory warranty affects the Insurer's obligation under this policy unless it exists at the time of the loss and either increases the risk at the time of loss or contributes to the loss. The provisions of this condition do not apply to failure to render payment of premium.

For liability policies only, bankruptcy or insolvency of the Insured shall not diminish the liability of the Insurer to third parties, and if execution against the Insured is returned unsatisfied, an action may be maintained against the Insurer to the extent that the liability is covered by the policy.

CANCELLATION AND NONRENEWAL

1. This policy may be canceled by the named Insured at any time by written notice or by surrender of this policy to the Insurer or any of its authorized representatives stating when thereafter such cancellation shall be effective.

2. New policies in effect for less than sixty (60) days and any policy for which the premium has not been paid when due, may be canceled by the Insurer by mailing or delivering written notice to the named Insured, stating when not less than ten (10) days thereafter, such cancellation shall be effective.

3. Other than for non-payment of premium, insurance under this policy which has been in effect for sixty (60) days for more may be canceled by the Insurer prior to expiration of the policy term only for one of the following specified reasons:

   a. Material misrepresentation,

   b. Substantial change in the risk assumed, except that the Insurer should reasonably have foreseen the change or contemplated the risk in writing the policy, or

   c. Substantial breaches of contractual duties, conditions or warranties.

Such cancellation may be made by mailing or delivering to the named Insured written notice stating when, or not less than ten (10) days thereafter, such cancellation shall be effective.

4. If the Insurer elects not to renew this policy for any reason other than nonpayment of premium, it shall mail or deliver to the named Insured, at the address shown in this policy, written notice of such nonrenewal not less than sixty (60) days prior to the expiration date.

54990 (12/92)

Not withstanding the failure of the Insurer to comply with the foregoing provisions, this policy shall terminate:

a. On such expiration date if:

    1. the named Insured has notified the Insurer or its agent that he does not wish this policy to be renewed, or

    2. if the Insurer has mailed notice of renewal premium due to the named Insured not more than seventy five (75) days and not less than ten (10) days prior to the expiration date, stating clearly that the policy will terminate on the expiration date if the named Insured has failed to pay the renewal premium by such expiration date,

b. On the effective date of any other insurance policy issued as a replacement for any insurance to which both such policies apply.

5. The mailing of notice as aforesaid shall be sufficient proof of notice. Delivery of such written notice by the Insurer shall be equivalent to mailing.

The following provisions are applicable to health care liability policies:

Termination of the policy by cancellation or nonrenewal is not effective as to patients claiming against the insured unless the Insured has been notified as provided above except that an insurer may cancel this policy if the insured is no longer licensed to practice medicine or nursing.

The notice of cancellation or nonrenewal issued to the Insured shall inform the Insured that his or her license to practice medicine or nursing may be suspended or not renewed if the Insured has no insurance or insufficient insurance. Copies of such notice will be retained by the Insurer for not less than 10 years from the date of mailing. The insurer shall notify the commissioner of each termination.

54990 (12/92)

All other terms, conditions and exclusions of the policy remain unchanged.

*Bernard J. Kelly*

Authorized Representative
or countersignature (where required by law)

This endorsement, effective 12:01 AM:  January 1, 2006

Forms a part of policy no.:  4     6062776

Issued to:  EDWARD E. GILLEN COMPANY
DLH CONSTRUCTION & TRUCKING , INC.

By:  THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA


## EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) EXCLUSION


IT IS AGREED THAT THIS POLICY DOES NOT APPLY TO ANY OBLIGATIONS INCURRED OR
IMPOSED UPON THE INSURED (OR WHICH ARE IMPUTED TO THE INSURED) UNDER THE
"EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974" PUBLIC LAW 93-406 AND ANY
AMENDMENTS THERETO.


All other terms, conditions and exclusions of the policy remain unchanged.

Authorized Representative
or countersignature (where required by law)

This endorsement, effective 12:01 AM:   January 1, 2006

Forms a part of policy no.:  4     6062776

Issued to:  EDWARD E. GILLEN COMPANY
DLH CONSTRUCTION & TRUCKING , INC.

By:  THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

## COVERAGE TERRITORY LIMITATION ENDORSEMENT

**Section III., Conditions,**  is amended to include the following:

Coverage Territory

Any claims or suits for damages occurring within the coverage territory must be brought within the United States of America, its territories or possessions, or in Canada .

Coverage Territory shall be deemed to be anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

All other terms, conditions and exclusions of the policy remain unchanged.

_____
Authorized Representative .
or countersignature (where required by law)

This endorsement, effective 12:01 AM:  January 1, 2006

Forms a part of policy no.:  4    6062776

Issued to:  EDWARD E. GILLEN COMPANY
DLH CONSTRUCTION & TRUCKING , INC.

By:  THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

## PREMIUM COMPUTATION - AMENDATORY ENDORSEMENT

ITEM 5.  POLICY PREMIUM as shown on the Declarations Page is amended to include the following:

| | |
|---|---|
| Advanced Premium: | $134,900 |
| Minimum Premium: | $134,900 |
| Minimum Earned Premium: | $33,725 |
| Estimated Exposure: | $FLAT RATED |
| Rate & Rating Basis: | $FLAT RATED |
| Audit Period: | N/A |

All other terms, conditions and exclusions of the policy remain unchanged.

Authorized Representative
or countersignature (where required by law)

This endorsement, effective 12:01 AM:    January 1, 2006

Forms a part of policy no.: 4        6062776

Issued to:    EDWARD E. GILLEN COMPANY
              DLH CONSTRUCTION & TRUCKING , INC.
By:  THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

## CROSS SUITS EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any injuries initiated, alleged, or caused to be brought about by a **Named Insured** covered by this policy against any other **Named Insured** covered by this policy.

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

**60441 (5/94)**
**AH0187**

This endorsement, effective 12:01 AM:  January 1, 2006

Forms a part of policy no.:  4     6062776

Issued to:  EDWARD E. GILLEN COMPANY
DLH CONSTRUCTION & TRUCKING , INC.

By:  THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

## NOTICE OF OCCURRENCE ENDORSEMENT

WHENEVER THE INSURED HAS INFORMATION FROM WHICH THE INSURED MAY REASONABLY
CONCLUDE THAT AN OCCURRENCE COVERED HEREUNDER INVOLVES INJURIES OR DAMAGES,
WHICH, IN THE EVENT THAT THE INSURED SHOULD BE HELD LIABLE, IS LIKELY TO INVOLVE
THIS POLICY, NOTICE SHALL BE SENT TO:

C.V. STARR CLAIMS, NY
175 WATER STREET, 21ST FLOOR
NEW YORK, NY 10038

AS SOON AS PRACTICABLE, PROVIDED, HOWEVER, THAT FAILURE TO GIVE NOTICE OF ANY
OCCURRENCE WHICH, AT THE TIME OF ITS HAPPENING, DID NOT APPEAR TO INVOLVE THIS
POLICY BUT WHICH, AT A LATER DATE, WOULD APPEAR TO GIVE RISE TO CLAIMS
HEREUNDER, SHALL NOT PREJUDICE SUCH CLAIMS.

All other terms, conditions and exclusions of the policy remain unchanged.

Authorized Representative
or countersignature (where required by law)

This endorsement, effective 12:01 AM: January 1, 2006

Forms a part of policy no.: 4    6062776

Issued to:  EDWARD E. GILLEN COMPANY
DLH CONSTRUCTION & TRUCKING , INC.

By:  THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

## EXCESS LIABILITY POLICY
## FUNGUS EXCLUSION

Section IV, Exclusions, is amended by adding the following exclusion to the policy:

This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury" or any other loss, injury, damage, cost or expense, including , but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

    a.  Any "fungus(i)", molds(s), mildew or yeast, or

    b.  Any "spore(s)" or toxins created or produced by or emanating from such fungus(i), mold(s), mildew or yeast, or

    c.  Any substance, vapor , gas, or other emission or organic or inorganic body or substance produced by or arising out of any "fungus(i)" , "mold(s)", mildew or yeast, or

    d.  Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)" , mold(s), mildew, yeast, or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury ,damage, cost or expense.

For the purposes of this exclusion, the following definitions are added to the Policy:

"Fungus(i)" includes, but is not limited to, Any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts and mushrooms.

"Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

"Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

All other terms, conditions and exclusions of the policy remain unchanged.

Authorized Representative
or countersignature (where required by law)

This endorsement, effective 12:01 AM:  January 1, 2006

Forms a part of policy no.:  4    6062776

Issued to:  EDWARD E. GILLEN COMPANY
DLH CONSTRUCTION & TRUCKING , INC.

By:  THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA


## LEAD EXCLUSION


THIS INSURANCE DOES NOT APPLY TO **BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY, ADVERTISING INJURY** OR ANY OTHER LOSS, COST OR EXPENSE ARISING OUT OF THE PRESENCE, INGESTION, INHALATION OR ABSORPTION OF OR EXPOSURE TO LEAD IN ANY FORM OR PRODUCTS CONTAINING LEAD.

**All other** terms, conditions and exclusions of the policy remain unchanged.

Authorized Representative
or countersignature (where required by law)

**This endorsement, effective 12:01 AM:** January 1, 2006

**Forms a part of policy no.:** 4    6062776

**Issued to:** EDWARD E. GILLEN COMPANY
DLH CONSTRUCTION & TRUCKING , INC.
**By:** THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

## MARINE LIABILITY EXCLUSION

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of any marine liability which includes but is not limited to the following:

| | |
|---|---|
| Charterers Liability | Terminal Operation Liability |
| Safe Berth Legal Liability | Wharfingers Liability |
| Stevedores Liability | Protection and Indemnity including Collision |
| Towers Liability | Ship Builders Liability |
| Jones Act Coverage | U.S. Longshoreman and Harbor Workers |
| Ship Repairers Legal Liability | |

It is further agreed that this insurance does not apply to:

1. **Bodily Injury** or **Property Damage** arising out of the maintenance, fueling, loading or unloading of any watercraft or **Property Damage** to any watercraft in the **Insured's** care, custody or control;

2. **Bodily Injury** to passengers or **Property Damage** to property of passengers;

3. **Property Damage** to any dock, pier, harbor, bridge, buoy, lighthouse, breakwater structure, beacon, cable or to any fixed or movable object or property for which the **Insured** may be held liable; or

4. The cost or expense of, or incidental to, the removal of the wreck of any vessel.

All other terms and conditions of this policy remain unchanged.

_Bernard J. Rel_

**AUTHORIZED REPRESENTATIVE**

**60468 (5/94)**
**AH0210**

## REINSURANCE LAYOFF SHEET

**NAMED ASSURED: EDWARD E. GILLEN COMPANY**

| RISK CLASS | ATT.L | POL.L | P.&T. |
|---|---|---|---|
| 13 | 4 | 6 | 4 |
| F. 500 | MONTH | NEW/REN | CM/OCC |
| N | 1 | REN | OCC |
| GROSS PREMIUM | | P & T PREMIUM | |
| $134,900 | | $134,900 | |

**POLICY NO.:**  4606-2776

**LIMIT(S):**  $5,000,000 XS U/L

**REASON:**  RENEWAL OF 4605-6273

| REINS. CERT.# | COMPANY | INTERM. CODE | REINS. CO. CODE | LIABILITY | % OF RISK | % OF COMM. | (CENTS OMITTED) PREMIUM |
|---|---|---|---|---|---|---|---|
| | NET | | | $5,000,000 | 100.00% | | $134,900 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | TOTAL: | | $5,000,000 | 100% | | $134,900 |

**EFFECTIVE DATE: 1-01-2006**

**UNDERWRITER:** _____ BERNARD NELS/jsa

R/I QS (4/93)