# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EDWARD E. GILLEN CO.,**

        Plaintiff,

**Case No. 10-C-564**

   -vs-

**THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA and LEXINGTON INSURANCE COMPANY,**

        Defendants.

## DECISION AND ORDER

In 2006, Edward E. Gillen Company ("Gillen") was hired to design and install an earth retention system ("ERS"), the purpose of which was to stabilize the ground to enable the construction of a new school building for the Latin School of Chicago. On May 2, 2006, an adjacent property owner sustained damage and the project was delayed, ultimately resulting in an adverse arbitration award being entered against Gillen in the amount of $2,163,369.08. Liberty Mutual Insurance Company ("Liberty") paid its policy limit of $1 million dollars. Gillen now seeks declaratory relief that it is entitled to indemnification for the balance of the award from The Insurance Company of the State of Pennsylvania ("ICSOP") and Lexington Insurance Company ("Lexington").

On August 23, Lexington filed a demand for arbitration with the American Arbitration Association. The next day, Lexington moved to dismiss and/or stay Gillen's claims in favor of arbitration. In response, Gillen moves for an order enjoining Lexington from pursuing

arbitration proceedings. For the reasons that follow, Lexington's motion to dismiss is denied,[1] and Gillen's motion for a preliminary injunction is granted.

Gillen is a Wisconsin corporation with its principal place of business located in Milwaukee. Gillen maintains a small office in Illinois, but its business, financial and management functions occur in Wisconsin. Gillen is engaged in the construction industry; specifically, the design and construction of foundations or other underground structural systems for buildings and other structures. Lexington is a foreign insurance corporation with its principal place of business in Boston, Massachusetts. ICSOP is a foreign corporation with its principal place of business in New York, New York. Accordingly, the parties are completely diverse and the Court may exercise jurisdiction pursuant to 28 U.S.C. § 1332(a).

Lexington identifies itself as a surplus lines insurer, which is an "unlicensed carrier operating without a certificate of authority to do business in Wisconsin, but nonetheless permitted to do so (generally because there are no licensed carriers in the state offering coverage for a particular type of risk) if certain conditions are met." *Combined Investigative Servs., Inc. v. Scottsdale Ins. Co.*, 477 N.W.2d 82, 83 (Wis. Ct. App. 1991); Wis. Stat. § 618.41 (Surplus lines insurance). Lexington executed and delivered to Gillen an Architects and Engineers Professional Liability Policy, effective for the policy period from January 1, 2006 to January 1, 2007. The Policy insured Gillen on a claims made basis up to $5,000,000 per claim and policy aggregate.

---

[1] ICSOP also moves to dismiss. The Court will address ICSOP's motion in a separate order.

The Policy contains a mandatory arbitration provision, which provides that "in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) arbitrators, consisting of two (2) party-nominated (non-impartial) arbitrators and a third (impartial) arbitrator (hereinafter 'umpire') as to the sole and exclusive remedy." Section 631.85, Wis. Stats., provides that an insurance policy "may contain provision for independent appraisal and compulsory arbitration, *subject to the provisions of s. 631.20*." § 631.85 (Appraisal or arbitration) (emphasis added). Section 631.20(1) provides, in turn, that no "form *subject to s. 631.01(1)* . . . may be used unless it has been filed with and approved by the commissioner and unless the insurer certifies that the form complies with chs. 600 to 655 and rules promulgated under chs. 600 to 655." § 631.20 (Filing and approval of forms) (emphasis added). Finally, § 631.01(1) provides, in relevant part, that "[t]his chapter [ch. 631] and ch. 632 apply to *all insurance policies* and group certificates delivered or issued for delivery in this state, on property ordinarily located in this state, on persons residing in this state when the policy or group certificate is issued, or on business operations in this state. . . ." (emphasis added). Accordingly, if an unapproved form[2] is used as an insurance policy issued for delivery in this state, or is otherwise subject to the requirements of § 631.01(1), a mandatory arbitration clause included therein cannot be enforced by the insurer. *Appleton Papers, Inc. v. Home Indemnity Co.*, 612 N.W.2d 760, 770 (Wis. Ct. App. 2000) ("Section

---

[2] A "Form" is a "policy, group certificate, or application prepared for general use and does not include one specially prepared for use in an individual case." Wis. Stat. § 600.03(21). By contrast, a "Policy" is "any document . . . used to describe in writing the terms of an insurance contract, including endorsements and riders and service contracts issued by motor clubs." § 600.03(35).

-3-

631.15(3m) requires that the policy must conform to § 631.85. That is accomplished here by, in effect, removing the arbitration provision that Home failed to obtain approval for. The policy is therefore enforceable as though the arbitration provisions did not exist").

Lexington concedes that the form used for Gillen's policy was not filed for approval with the Wisconsin Insurance Commissioner. Lexington also does not dispute that Gillen's policy was either "delivered or issued for delivery in this state" or was "on business operations in this state." § 631.01(1). Lexington argues only that as a surplus lines insurer, it is not subject to any of the requirements set forth in ch. 631, including §§ 631.20 and 631.85, because the commissioner has not enacted any rules to that effect. Lexington relies on a provision in the surplus lines insurance section, § 618.41, which provides that the commissioner "may by rule subject policies written under this section to as much of the regulation provided by chs. 600 to 646 and 655 for comparable policies written by authorized insurers as the commissioner finds to be necessary to protect the interests of insureds and the public in this state." § 618.41(11). This interpretation directly conflicts with § 631.01(1), which provides that ch. 631 applies to *all* insurance policies delivered or issued for delivery in this state. Section 631.01(1) lists a number of exceptions, including those listed in § 600.01 and § 618.42 (Direct procurement of insurance), but surplus lines insurance, § 618.41, is nowhere to be found. Conversely, other statutory provisions expressly exempt surplus lines insurers. *See, e.g.,* Wis. Stat. § 646.01(j). If, as Lexington argues, surplus lines insurers are not subject to chapters 600 to 646 unless the commissioner says so, then the language

-4-

exempting surplus lines insurers from ch. 646 would be meaningless.[3] Therefore, surplus lines insurance policies are subject to chapter 631, including §§ 631.20 and 631.85, and Lexington cannot enforce the arbitration provision because of its failure to gain approval for its form. At a minimum, Gillen is reasonably likely to succeed on its claim that the underlying dispute is not arbitrable.

Before entering the injunction sought by Gillen, the Court must also examine whether Gillen will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue. *Plummer v. Am. Inst. of Certified Public Accountants*, 97 F.3d 220, 229 (7th Cir. 1996). This requirement is easily met. Numerous cases hold that a party forced into an unauthorized arbitration proceeding is "irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997); *see also McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194 (8th Cir. 1997) ("If a court has concluded that a dispute is *non*-arbitrable, prior cases uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award"); *U.S. for Use and Benefit of Capital Elec. Const. Co., Inc. v. Pool and Canfield, Inc.*, 778 F.

---

[3] Lexington also cites § 631.01(5) (OTHER EXCEPTIONS), which provides that the commissioner "may by rule exempt any class of insurance contract or insurer from any or all of the provisions of this chapter [ch. 631] and ch. 632 if the interests of Wisconsin insureds or creditors or of the public of this state do not require such regulation." To the Court's knowledge, the commissioner has not issued a rule exempting surplus lines insurers from chapter 631 pursuant to § 631.01(5).

-5-

Supp. 1088, 1092 (W.D. Mo. 1991) ("It would be irrational to hold that there is no irreparable harm in forcing a party to be subjected to the cost and hardship of a meaningless proceeding simply because it could be later reviewed by a proper forum").

Finally, the Court must examine whether the threatened injury to Gillen outweighs the threatened harm the injunction may inflict on Lexington, and also whether granting the injunction will harm the public interest. *Plummer*, 97 F.3d at 229. The threatened injury to Gillen far outweighs the threatened injury if the Court wrongfully enjoins Lexington from pursuing arbitration at this time. The injury from being wrongfully forced to arbitrate is irreparable, but Lexington is only facing a delay in the arbitration process if it turns out that the arbitration provision is enforceable. Finally, granting the injunction would not harm the public interest. The general public policy in favor of arbitration does not apply to insurance contracts in Wisconsin, at least to extent that the relevant forms are not approved by the insurance commissioner. *Appleton Papers*, 612 N.W.2d at 771 (public policy in favor of arbitration "does not apply to insurance policies, as evidenced by the plain language of Wis. Stats. § 631.85. The legislature pronounced this state's public policy when it subjected mandatory arbitration provisions in insurance policies to insurance commissioner approval").

Federal Rule of Civil Procedure 65(c) provides that the Court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." As noted, the only potential harm to Lexington is a delay in pursuing arbitration while the issue is litigated here in federal

court. A bond is generally unnecessary "where there has been no proof of likelihood of harm, or where the injunctive order was issued 'to aid and preserve the court's jurisdiction over the subject matter involved.'" *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (quoting *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961)). Moreover, the strength of Gillen's position counsels against requiring security. *Huntington Learning Centers, Inc. v. BMW Educ., LLC*, No. 10-C-79, 2010 WL 1006545, at *1 (E.D. Wis. March 15, 2010) (security unnecessary when there is "virtually no risk that the defendants will be wrongfully enjoined by the forthcoming injunction").

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Lexington's motion to dismiss [D. 24] is **DENIED**; and

2. Gillen's motion for a preliminary injunction [D. 30] is **GRANTED**. Lexington is enjoined from pursuing the arbitration proceedings it commenced on August 23, 2010 against Gillen.

Dated at Milwaukee, Wisconsin, this 2nd day of November, 2010.

                                                **SO ORDERED,**

                                                *s/ Rudolph T. Randa*
                                                **HON. RUDOLPH T. RANDA**
                                                **U.S. District Judge**