# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EDWARD E. GILLEN CO.,

        Plaintiff,

    -vs-

Case No. 10-C-564

THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA and
LEXINGTON INSURANCE COMPANY,

        Defendants.

# DECISION AND ORDER

This insurance coverage dispute relates to the construction of a school building for the Latin School of Chicago. The plaintiff, Edward E. Gillen Company ("Gillen"), was hired to design and install an earth retention system to stabilize the ground for construction. On May 2, 2006, the Korndorf Home, located adjacent to the project site, sustained damage, and the project was delayed, ultimately resulting in an adverse arbitration award against Gillen in excess of $2 million dollars. Gillen's primary liability insurer, Liberty Mutual Insurance Company ("Liberty Mutual"), paid its policy limit of one million dollars. On May 3, 2011, the Court granted Liberty Mutual's motion for summary judgment, finding that Liberty Mutual exhausted its policy limits and owes "no further duty to defend or indemnify Gillen in relation to any claims arising out of the underlying incident." 2011 WL 1694431, at *1. Gillen is pursuing the balance of the award from its excess liability insurer, The Insurance Company of the State of Pennsylvania ("ICSOP"), and its professional liability insurer,

Lexington Insurance Company. Now before the Court is Gillen's motion for partial summary judgment and ICSOP's motion for judgment on the pleadings.[1] For the reasons that follow, both of these motions are denied.

I. **Gillen's motion for partial summary judgment**

Gillen argues that ICSOP should be estopped from asserting coverage defenses because ICSOP failed to notify Gillen that it intended to disclaim its excess coverage obligations. Wisconsin law governs this dispute, and the general rule in Wisconsin is that "the doctrine of waiver or estoppel based upon the conduct or action of the insurer or its agent is not applicable to matters of coverage as distinguished from grounds for forfeiture." *Shannon v. Shannon*, 442 N.W. 2d 25, 33 (Wis. 1989). In a recent case, the Wisconsin Court of Appeals distinguished *Shannon* and held that when an "insurer forgoes a reservation of rights and exclusively controls the defense of a lawsuit, obtaining a result to the detriment and prejudice of the insured, it is barred from denying coverage." *Maxwell v. Hartford Union High Sch. Dist.*, 791 N.W. 2d 195, 196 (Wis. Ct. App. 2010). Gillen pins its hopes on this case, but its hopes were dashed when the Wisconsin Supreme Court reversed, reaffirming the general rule that the "failure to issue a reservation of rights letter cannot be used to defeat, by waiver or estoppel, a coverage clause – as distinguished from grounds for forfeiture – in an insurance contract." *Maxwell v. Hartford Union High Sch. Dist.*, No. 2009AP2176, — N.W. 2d —, 2012 WL 1937109, at *12 (Wis. May 30, 2012). If coverage by estoppel does not apply to a primary insurer who actually controlled the defense (the

---

[1] Lexington recently moved for summary judgment, but briefing on this motion is stayed for a period of time until Gillen retains new legal counsel.

situation in *Maxwell*), then the Wisconsin Supreme Court would similarly hold that it does not apply to ICSOP, an excess insurer who played no part in the defense. "Waiver and estoppel cannot be used to supply coverage from the insurer to protect the insured against risks not included in the policy or expressly excluded therefrom, for that would force the insurer to pay a loss for which it has not charged a premium. Moreover, if courts entertained the prospect that insureds could gain unpurchased coverage on account of collateral action by the insurer, unprotected insureds would have obvious incentive to pursue litigation." *Maxwell* at *7. This Court must follow *Shannon* and *Maxwell*. *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000) (diversity court applying Wisconsin law "must apply the law that would be applied in this context by the Wisconsin Supreme Court").

## II. ICSOP's motion for judgment on the pleadings

A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss for failure to state a claim. *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). To survive such a motion, the plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A court may rule on a motion for judgment on the pleadings based on a review of the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998). Moreover, the Court may

-3-

consider documents such as the insurance policy and the arbitration award because they are concededly authentic, referred to in the complaint, and central to the plaintiff's claim. *Hecker v. Deer & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

The ICSOP Excess Policy follows form to Liberty Mutual's policy. It is a standard Commercial General Liability Policy that provides $5 million dollars of excess coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The term "property damage" is defined as "Physical injury to tangible property, including all resulting loss of use of that property" or "Loss of use of tangible property that is not physically injured." The insurance applies to "bodily injury" and "property damages" only if caused by an "occurrence." An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

ICSOP argues that "faulty workmanship" cannot be considered an "occurrence" under a CGL policy. *Glendenning's Limestone & Ready-Mix Co., Inc. v. Reimer*, 721 N.W. 2d 704, 711-717 (Wis. Ct. App. 2006) (discussing *Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W. 2d 65 (Wis. 2004), *1325 N. Van Buren, LLC v. T-3 Group, Ltd.*, 716 N.W. 2d 822 (Wis. 2006) and *Kalchthaler v. Keller Constr. Co.*, 591 N.W. 2d 169 (Wis. Ct. App. 1999)). This was the conclusion of *Glendenning's*, but the distinction is irrelevant for purposes of the instant case because Gillen does not contend that faulty workmanship is the "occurrence" giving rise to coverage under the policy. "The lessons of *American Girl*, *Glendenning's*, and *Kalchthaler* are that while faulty workmanship is not an 'occurrence,' faulty workmanship

-4-

may *cause* an 'occurrence.' That is, faulty workmanship may cause an unintended event, such as soil settling in *American Girl*, the leaking windows in *Kalchthaler*, or, in this case, soil erosion, and that event – the 'occurrence' – may result in harm to other property." *Acuity v. Soc. Ins.*, 810 N.W. 2d 812, 819 (Wis. Ct. App. 2012). Here, Gillen's faulty workmanship caused accidental soil settlement – the "occurrence" that damaged the adjacent property.

Replaying a theme from the previous round of motions, ICSOP is attempting to divide the arbitration award into two general segments: one for damage to the Korndorf Home in the amount of $476,187.27, and the balance for damages arising from "project delay." This is an improperly narrow view of the coverage provisions in the policy. As discussed above, the damage to the neighboring home is "property damage" caused by an "occurrence." The policy then provides coverage for "those sums that the insured becomes legally obligated to pay as damages *because of*" that property damage. The property damage to the neighboring home is the reason the project had to be delayed. Therefore, the delay damages are a direct result of the property damage, and they are included in the initial grant of coverage. *See, e.g., Dimambro-Northend Assoc. v. United Const., Inc.*, 397 N.W. 2d 547, 550-51 (Mich. Ct. App. 1986) (CGL policy "covered the damages which United/Mancini became legally obligated to pay as a result of the fire," including delay damages relating to the completion of a nearby project).

In a standard CGL policy, "business risk exclusions (j) through (n) preclude coverage generally for property damage to the work of the insured." *American Girl* at 81. ICSOP

-5-

argues that it is entitled to judgment pursuant to exclusion (m), "Damage to Impaired Property or Property Not Physically Injured." This provision excludes coverage for property damage to "impaired property" or "property that has not been physically injured, arising out of" a "defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work.'" Once again, ICSOP is attempting to apply this exclusion to the "delay damages" because the Latin School project was not "physically injured" by the faulty installation. But as the Court just discussed, the "property damage" that triggers coverage is the physical damage to the neighboring property. Gillen didn't do any work on that property, so the Korndorf Home is not "impaired property," defined by the policy as "tangible property, other than 'your product' or 'your work', that cannot be used or is less useful because" it "incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous." Exclusion (m) only applies when the relevant "property damage" arises from property that is not physically injured but is rendered useless or less useful by the insured's "product" or "work." *See, e.g., Am. Motorists, Inc. v. Trane Co.*, 544 F. Supp. 669, 688 (W.D. Wis. 1982) ("Under Exclusion (m), where loss of use results from the failure of the insured's products to meet the level of performance which the insured warranted or represented, there is no coverage for loss of use. This provision describes precisely what occurred in this case: the heat exchangers failed to perform at the level that Trane had promised"); *Tweet/Garot-August Winter, LLC v. Liberty Mut. Fire Ins. Co.*, No. 06-C-800, 2007 WL 445988, at *8 (E.D. Wis. Feb. 7, 2007) ("Tweet/Garot's 'work,' which includes the defective valves, caused damage to other Lambeau Field property that then

could not be used or was made less useful because it incorporated the defective valves, and the usefulness of the other Lambeau Field property could be – in fact, was – restored by removing and replacing the valves").

Finally, ICSOP argues that the following exclusions apply: "property damage" to "That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations," exclusion j(5), or "property damage" to "That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it," exclusion j(6). Once again, the relevant "property damage" in this case is the physical injury to the neighboring home. Gillen was not "performing operations" on that property. Therefore, these exclusions are inapplicable.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Gillen's motion for partial summary judgment [ECF No. 93] is **DENIED**; and

2. ICSOP's motion for judgment on the pleadings [ECF No. 99] is **DENIED**.

Dated at Milwaukee, Wisconsin, this 15th day of June, 2012.

**BY THE COURT:**

*/s/ Rudolph T. Randa*

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**