# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EDWARD E. GILLEN CO.,**

      Plaintiff,

  -vs-

**THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,**

      Defendant.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and BMO HARRIS BANK, N.A.,**

**Case No. 10-C-564**

      Intervening Plaintiffs,

  -vs-

**THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA and EDWARD E. GILLEN CO.,**

      Defendants.

## DECISION AND ORDER

In this action, Edward E. Gillen Co. sued the Insurance Company of the State of Pennsylvania (ICSOP) for recovery under an excess liability policy. Gillen and ICSOP eventually settled for $1.2 million dollars. In recognition of competing claims to the settlement proceeds, the parties deposited this amount with the Court on May 9, 2014. BMO Harris Bank (BMO Harris or BMO) argues that it is entitled to the entire amount as a

first-position secured creditor. Fidelity and Deposit Company of Maryland (F&D) argues that it has first priority to $825,496.08 as a judgment lien creditor. Gillen argues that it should be paid $376,894.38 in attorneys' fees and costs pursuant to the common fund doctrine.

The claim which underlies this case was pursued by the Meyne Company against Gillen. Meyne was a general contractor on a project for the Latin School of Chicago. Gillen was Meyne's subcontractor for the installation of an earth retention system. In May 2010, an arbitration award was entered in favor of Meyne and against Gillen in the amount of $2,163,369.08. Gillen prevailed on its counterclaim against Meyne in the amount of $380,040.61. The end result was a net award for Meyne in the amount of $1,783,328.47. The unsatisfied portion of the judgment was reduced by a million dollars when Liberty Mutual Insurance Company, Gillen's primary insurer, paid up to its policy limit.

Gillen filed suit in the Northern District of Illinois, which affirmed the award. Gillen appealed to the Seventh Circuit and obtained a supersedeas bond from F&D in the amount of $786,929.82 to stay enforcement of the Meyne Judgment pending appeal. While the appeal was pending, Gillen and Meyne entered into a written settlement agreement, providing that Gillen was to dismiss the appeal and pay the unpaid balance of the Meyne Judgment. F&D was a party to that settlement agreement because the supersedeas bond

was to remain in place guaranteeing Gillen's settlement promise to pay Meyne (the amount was increased to $825,496.08 pursuant to the settlement). F&D paid on the bond, and Meyne assigned the Meyne Judgment to F&D, by which F&D became the Meyne Judgment creditor.

BMO Harris is not a judgment creditor. Instead, BMO Harris is Gillen's long-term lender and has a first position security interest in all of its assets. Gillen is indebted to BMO Harris in excess of $7 million pursuant to a variety of obligations dating back to the early 1990s. These obligations are secured by, among other things, security agreements from 1993, 1995, 1996, and 2012. Thus, Gillen's debt is secured by almost all of its assets, including accounts, chattel paper, instruments, promissory notes, money, intangibles, payment intangibles, other rights to payment or performance, and all products or proceeds resulting from these assets as set forth in BMO's UCC financing statements.

BMO Harris argues that its security interest attaches to the Gillen-ICSOP settlement proceeds and trumps F&D's judgment lien. However, a security interest is not enforceable against the debtor unless the debtor has "rights in the collateral." Wis. Stat. § 409.203(2)(b); *In re Pubs, Inc. of Champaign*, 618 F.2d 432, 436 (7th Cir. 1980) (applying Illinois law). Gillen has no right to the proceeds of the Gillen-ICSOP lawsuit (but only to the extent that those proceeds satisfy the Meyne Judgment – more on that later).

As the Fifth Circuit has explained in the context of bankruptcy proceedings:

> Examples of insurance policies whose proceeds are property of the estate include casualty, collision, life, and fire insurance policies in which the debtor is a beneficiary. Proceeds of such insurance policies, if made payable to the debtor rather than a third party such as a creditor, are property of the estate and may inure to all bankruptcy creditors. But under the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable *only for the benefit of those harmed by the debtor under the terms of the insurance contract*.

*Matter of Edgeworth*, 993 F.2d 51, 56 (5th Cir. 1993) (emphasis added). In other words, policies such as life and fire insurance policies are first-party policies of indemnification. Proceeds from those types of policies belong to the owner of the policy because they compensate the owner for a cognizable loss. Liability policies, like the one at issue in this case, protect the insured from suit, but the proceeds are not assets of the policy owner. Instead, the proceeds are for the benefit of those harmed by the insured, who stand in relation to the policy as third-party beneficiaries. Thus, the proceeds belong first to F&D as assignee of Meyne.

Unlike the portion of the Gillen-ICSOP settlement that covers the Meyne Judgment, the balance of the settlement *does* belong to Gillen. (As an aside, it appears that the settlement exceeds the amount necessary to satisfy the Meyne judgment because ICSOP refused to provide a defense, forcing Gillen to incur additional costs and fees). Thus, BMO's security interest

attaches to the balance of the settlement amount: $1,200,000.00 - $825,496.08 = $374,503.92.

Finally, the Court rejects Gillen's claim under the common fund doctrine. F&D argues first that Illinois law applies to this claim, although ultimately the result would be the same under Wisconsin or Illinois law. The Court agrees on both counts. The common fund doctrine recognizes that a "litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Wis. Retired Teachers Ass'n, Inc. v. Employe Trust Funds Bd.*, 558 N.W.2d 83, 98 (Wis. 1997). Gillen sued ICSOP for its own benefit – to enforce its rights under its liability policy, and to ensure that it wouldn't have to use its own assets to satisfy the Meyne Judgment. The amount recovered by Gillen in excess of the Meyne Judgment similarly inures to Gillen's benefit. Indeed, the common fund doctrine simply does not apply where, as here, the supposed beneficiaries of the fund are forced to protect their own interests by joining the "fund-seeking" lawsuit. *State Farm Mut. Auto Ins. Co. v. Geline*, 179 N.W.2d 815, 821 (Wis. 1970). Thus, Gillen is not entitled to relief under the common fund doctrine. *Wendling v. S. Ill. Hosp. Servs.*, 950 N.E.2d 646, 648 (Ill. 2011) ("Illinois courts have never applied the common fund doctrine to a creditor-debtor relationship, …); *see also Day v. Alta Bates Medical Ctr.*, 98

Cal. App. 4th 243 (1st Dist. 2002).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Gillen's motion for attorney's fees [ECF No. 205] is **DENIED**; and

2. Of the $1.2 million dollars deposited with the Court on May 9, 2014, F&D is entitled to $825,496.08, plus proportional interest accrued, and BMO Harris is entitled to $374,503.92, plus proportional interest accrued. The Clerk of Court is directed to enter judgment accordingly. The Clerk shall not distribute the funds until the time to file a notice of appeal expires. If a notice of appeal is timely filed, the funds will remain on deposit pending a ruling from the court of appeals.

Dated at Milwaukee, Wisconsin, this 21st day of January, 2015.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**